UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21021-CIV-MORENO/OTAZO-REYES

ADRIAN MUSSON, through his Court Appointed
Guardian MAXWELL SARGENT, and ROSALIE
MUSSON and JAMES MUSSON as legal guardians
of H.M., G.M., A.M., and R.M.,

        Plaintiffs,

v.

BRADSHAW CONSTRUCTION CORPORATION.
a Foreign Corporation,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Bradshaw Construction Corporation's ("Bradshaw") Motion for Summary Judgment [D.E. 60]. This matter was referred to the undersigned pursuant to Title 28, United States Code, Section 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 63]. The undersigned held a hearing on this matter on January 8, 2014. For the reasons stated below, the undersigned RESPECTFULLY RECOMMENDS that the Motion for Summary Judgment be GRANTED.

### PROCEDURAL BACKGROUND

Adrian Musson ("Adrian") is a former employee of Bradshaw who sustained devastating injuries while working at a construction job site and is currently in a persistent vegetative state. Adrian brings this action through his court appointed guardian, Maxwell Sargent ("Sargent"). Co-Plaintiffs Rosalie and James Musson (the "Mussons") have been appointed legal guardians

for Adrian's four minor children. The Amended Complaint asserts two counts:

<u>Count I by Sargent</u>: Violation of Fla. Stat. § 440.11(1)(b), seeking damages for physical and emotional injuries, pain and suffering, loss of capacity for the enjoyment of life, medical expenses, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, if any.

<u>Count II by the Mussons</u>: Loss of Parental Consortium, seeking damages for permanent loss of support, services, comfort, companionship, and society, pain and suffering, and loss of capacity for the enjoyment of life.

Am. Compl. [D.E. 11 at 4-7].[1]

Fla. Stat. § 440.11(1)(b) provides an exception to employers' immunity under the Workers' Compensation exclusive regime

> (b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
>
> 1. The employer deliberately intended to injure the employee; or
>
> 2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

Fla. Stat. § 440.11(1)(b). In its Motion for Summary Judgment, Bradshaw argues that Sargent and the Mussons (collectively, "Plaintiffs") cannot meet the high evidentiary burden imposed by Section 440.11(1)(b).

## STANDARD OF REVIEW

A motion for summary judgment should only be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is

---

[1] Given the derivative nature of Count II, its viability is wholly dependent on Count I.

2

such that a reasonable jury could return a verdict for the nonmoving party." Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1232 (11th Cir. 2011). The "genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard . . . . In essence [] the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." Reese, 637 F.3d at 1231; see also Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998) (same). "All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." Pippin v. Nat'l Union Fire Ins. Co. of Pittsburgh, 845 F. Supp. 849, 850 (M.D. Fla. 1994).

The movant can meet its burden of demonstrating its entitlement to summary judgment by "'pointing to an absence of evidence to support the nonmoving party's case.'" Founders Ins. Co. v. Tome, No. 6:10-CV-973-ORL-36GJK, 2012 WL 2928981, at *7 (M.D. Fla. Mar. 2, 2012) (quoting Boudreaux v. Swift Trans. Co., Inc., 402 F.3d 536, 544-45 (5th Cir. 2005). Once the movant points to the absence of evidence as to an essential element of the nonmovant's case for which the nonmovant has the burden of proof at trial, the nonmoving party is required to come forward with evidence showing that there is a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## UNDISPUTED MATERIAL FACTS

1. Plaintiffs have filed this lawsuit against Bradshaw for injuries sustained by Adrian while he was working on a construction project for Bradshaw on January 23, 2012.

2. Bradshaw is a subcontractor that builds tunnels underneath roads for sewer and

water.

3. Bradshaw hired Adrian on December 5, 2011. A safety meeting was held on that date with new hires.

4. Immediately prior to working for Bradshaw, Adrian had worked for approximately three years as a Certified Nursing Assistant ("C.N.A.") at Bear Creek Nursing Facility in Hudson, Florida. Prior to his nursing job, Adrian had worked in construction as a home remodeling laborer and as a mason tender.

5. The accident at issue arose in relation to a project for the City of Hollywood for which Bradshaw built two tunnels for a utility pipe: (1) a tunnel under US-1; and (2) a tunnel under the Florida East Coast ("FEC") railway at McKinley Street.

6. The tunnel project requires "head walls," which are concrete structures at each end of the tunnel shaft perpendicular to the path of the tunnel with a large circular hole in the middle to accommodate the Tunnel Boring Machine ("TBM") passing through. Shafts must be dug for there to be space below ground level for the TBM to dig the tunnel. Each tunnel job requires two (2) shafts; one from which the TBM is sent, and one which receives the TBM. The purpose of the head walls is to guide the TBM in the proper direction and angle from one end of the tunnel to the other. In addition, the head walls help prevent subsidence of the surrounding ground as the TBM passes through the shaft. The head walls are constructed inside the launching and receiving ends of the tunnel shaft with concrete poured into plywood forms supported by external steel bracing. The void or hole in the head wall is created by including a wooden "form block out" or "doughnut" in the head wall form that is later removed after the head wall concrete around the doughnut has set.

7. A "waler" is a horizontal steel beam that is part of the shaft structure.

8. In the head wall at issue in this case, one internal vertical steel beam was welded to the waler above the doughnut for the purposes of holding the doughnut down and in place inside the form and preventing it from floating up and out of position during the concrete pour.

9. On January 23, 2012, Adrian was the designated "concrete pourer" on the first of the two head walls for the FEC tunnel at McKinley Street.

10. Prior to the accident, co-workers Brad Short and Jason Lytle saw Adrian standing on the waler to pour the concrete. As concrete was poured, the doughnut form rose. No one saw Adrian step down from the waler to the doughnut but Adrian was found doubled over, trapped and crushed between the risen doughnut and the waler.

11. Bradshaw employees used a chainsaw and torch to free Adrian and pulled him out with his safety harness.

12. Witnesses testified that they had never seen an accident like this.

13. Bradshaw had never experienced a floating doughnut in the same or substantially similar manner as occurred during Adrian's accident.

14. No Bradshaw employees were injured during the concrete pours for the two head walls at the US-1 job site, which were completed before Adrian's accident at the FEC/McKinley Street job site.

15. Bradshaw held meetings after the accident to try to figure out what went wrong and why Adrian was where he was when the accident occurred.

16. After the accident, OSHA issued the following citations:

> <u>Violation Item # 1</u>: *Serious.* [Bradshaw] did not provide training for each employee performing concrete placement work that would enable those employees to recognize the hazards associated with that work, on or about January 23, 2012.
>
> <u>Violation Item # 2</u>: *Serious.* Formwork for the concrete placement of a

5

>Micro Tunnel "Doughnut" Portal Form was not designed, fabricated, erected, supported, braced and maintained so it was capable of supporting without failure all applied loads, on or about January 23, 2012.
>
>Violation Item # 3: *Serious.* Drawings or plans for the formwork (including shoring equipment) placed for the installation of a Micro Tunnel "Doughnut" Portal Form were not available at the jobsite, on or about January 23, 2012.
>
>Violation Item # 4: *Serious.* Erected shoring equipment for the bracing of a Micro Tunnel "Doughnut" Portal Form was not inspected during concrete placement, on or about January 23, 2012.

17. Pursuant to Bradshaw's settlement with the Department of Labor, Violation Item # 1 was dismissed and Items # 3 and # 4 were reclassified to *Other than Serious.* Violation # 2 was corrected during inspection.

18. Chief Ron White ("Chief White"), a battalion chief for special operations with the City of Hollywood Fire Rescue Department visited the FEC/McKinley job site several times prior to Adrian's accident. On his second visit, Chief White took his team on an informal field training trip to become familiar with the site and to conduct pre-incident planning in case an incident were to occur at the site.

19. Chief White testified that after the field visit he took his team back to the fire station and sat down with them to try to imagine what might go wrong. He admitted that even though he tried to anticipate all problems, he never foresaw Adrian's accident.

## DISCUSSION

### A. *The contours of Section 440.11(1)(b)*

The elements of the statutory intentional tort exception to Workers' Compensation immunity are:

>1) employer knowledge of a known danger, based upon prior similar accidents or explicit warnings specifically identifying the danger that was virtually certain to cause injury or death to the employee; 2) the employee was not aware of the

>danger, because it was not apparent; and 3) deliberate concealment or misrepresentation by the employer, preventing employee from exercising informed judgment as to whether to perform the work.

Gorham v. Zachry Indus., Inc., 105 So. 3d 629, 633 (Fla. 4th DCA 2013) (citing Fla. Stat. § 440.11(1)(b); Fla. Std. Jury Instr. (Civ.) 414.5). "All three elements must be proved by clear and convincing evidence to overcome statutory immunity of the employer." Id. The term "virtually certain" in the first element of the cause of action means "that a plaintiff must show that a given danger will result in an accident every--or almost every--time." List Indus., Inc. v. Dalien, 107 So. 3d 470, 471 (Fla. 4th DCA 2013). In List Indus., the Fourth District Court of Appeal opined that "given the stringent standard required to overcome an employer's statutory immunity, this issue is amenable to being decided on summary judgment." Id. at 473.

In its Motion for Summary Judgment, Bradshaw argues that there is no evidence that Adrian's injury was virtually certain to occur, or that Bradshaw deliberately concealed or misrepresented the danger associated with the concrete pour. Because Bradshaw does not predicate its summary judgment motion on the second element of Plaintiffs' cause of action—that Adrian was not aware of the danger because it was not apparent—there is no need for further discussion of that element.[2] Further, at the January 8th hearing, Plaintiffs clarified that they are not relying on the prior similar accidents prong of the first element and are relying solely on the explicit warnings prong.[3] Therefore, to defeat Bradshaw's Motion for Summary Judgment, Plaintiffs had to come forward with evidence showing that there is a genuine issue of material fact as to: whether Adrian's injury was virtually certain to occur based on explicit warnings specifically identifying the danger associated with the concrete pour; and whether Bradshaw

---

[2] As noted above, for the employer's immunity to be overcome, each of the three elements of a Section 440.11(1)(b) violation must be established by clear and convincing evidence. Gorham, 105 So. 3d at 633.
[3] At the hearing, neither side was able to cite any case where a Section 440.11(1)(b) claim has been pursued solely on the basis of the warnings prong.

7

deliberately concealed or misrepresented the danger. Celotex, 477 U.S. at 324.

### B. *Virtual certainty based on explicit warnings*

Plaintiffs contend that there are issues of material fact as to this element based on the testimony of Chief White and certain Bradshaw employees.[4]

#### i. *Chief Ron White*

Chief White testified that he first visited the FEC/McKinley job site in early January, 2012, when an excavation was being conducted without a trench box. See Transcript of Deposition of Chief Ron White [D.E. 61-8 at 40-45]. He stopped the work until a trench box was brought in. Id. at 12. No concrete pouring was taking place at that time. Id. at 45.

Chief White arranged for a return visit, to bring his team on an informal field training trip to become familiar with the site and to conduct pre-incident planning in case an incident were to occur at the site. Id. at 48-53. At that time, the trench box or cofferdam was already in place. Id. at 51-52. No work was going on but Chief White made inquiries as to how the tunneling and the utility pipe placement and sealing work would be conducted. Id. at 48-53. It is an undisputed fact that, after the field visit, Chief White took his team back to the fire station, sat down with them to try to imagine what might go wrong, and, even though he tried to anticipate all problems, he never foresaw Adrian's accident. Id. at 52-55.

Chief White visited the work site on two other occasions prior to Adrian's accident. Id. at 20-25, 57-60. His concerns at those times generally related to workers working inside pipes without safety harnesses, and without proper monitoring and ventilation. Id. The first time he stopped the work until the deficiencies were remedied; the second time they were remedied just

---

[4] Plaintiffs also rely on the post-accident OSHA citations and the absence of design drawings for the doughnut, which was noted therein. However, these do not constitute pre-accident warnings, as required by the statute. Fla. Stat. § 440.11(1)(b). See also Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684, 693 (Fla. 4th DCA 2006) (finding that OSHA citations did not create factual issues that would preclude the granting of summary judgment for the employer).

as he arrived. Id.

Chief White's testimony does not create an issue of material fact as to whether Adrian's injury was virtually certain to occur based on explicit warnings specifically identifying the danger associated with the concrete pour. The two times that Chief White stopped work at the job site, he did so for lack of a trench box and for work inside pipes without safety harnesses and without proper monitoring and ventilation. None of these issues related to concrete pouring. Indeed, when asked specifically if he foresaw Adrian's accident he replied in the negative. If Chief White could not foresee Adrian's concrete pouring accident, then, *a fortiori*, he could not have issued explicit warnings specifically identifying the danger associated with such operation.

### ii. *Troy Buterbaugh*

Plaintiffs also rely on testimony from former Bradshaw employee Troy Buterbaugh ("Buterbaugh") to create a factual issue as to the warnings prong of their cause of action. Buterbaugh testified that, in the past, he had participated in head wall/doughnut building and that, in his experience, three I-beams would be used to keep a doughnut comparable in size from the one at the FEC/McKinley job site from rising during the concrete pour. See Transcript of Deposition of Troy Buterbaugh [D.E. 61-11 at 24, 29-31]. Buterbaugh also testified regarding comments purportedly made by Bradshaw site superintendent Gerald Simon ("Simon"), site foreman Jason Lytle ("Lytle") and co-worker Brad Short ("Short") prior to the concrete pour by Adrian. Id. at 33-34. As best can be ascertained from Buterbaugh's testimony: Simon commented that more bracing was needed for the form work at the head wall; Lytle was standing next to Simon at the time of the latter's comment; Short may or may not have been standing next to Simon at the time of the comment; Lytle may or may not have approached Short about the comment; Short commented at one point "that he had done this that way before;" and

Buterbaugh did not see anybody add any additional bracing to the form work after Simon's comment. Id. at 33-34, 38.

Plaintiffs contend that Simon's comment was an explicit warning, unheeded by Bradshaw, that additional bracing, in the form of three I-beams rather than one, should have been used at the FEC/McKinley head wall prior to the concrete pour. However, Plaintiffs' proposed inference that the additional bracing meant two additional I-beams is not supported by Buterbaugh's non-specific testimony. It is also not supported by Simon's testimony that the only bracing he directed Lytle to add was on the face of the form, by installing two screw jacks and pipe about midway up the steel sheet on the head wall, which was done. See Transcript of Deposition of Gerald Simon [D.E. 61-9 at 62-66]. See also Transcript of Deposition of Jason Lytle [D.E. 61-7 at 90-92] (stating that he installed extra screw jacks on the face of the steel sheet on the head wall per Simon's instructions because Simon was afraid that the sheet might fall down). And Short's purported comment at some point "that he had done this that way before" is meaningless. Thus, there is no evidence that Simon issued any explicit warnings specifically identifying the danger associated with the concrete pour that went unheeded by Bradshaw.

### iii. John Katchan

Plaintiffs also argue that John Katchan ("Katchan"), Bradshaw's safety director, testified that, "under the facts and circumstances of this case, the situation in which Adrian Musson was placed would almost always result in injury and it was almost certain that an accident or injury would occur." Plaintiffs' Opposition [D.E. 74 at 16]. Plaintiffs rely on the following portions of Katchan's testimony:

> Q. Now, if you had a situation where you had a concrete pourer who wasn't experienced, and you had a situation where the forms were not constructed by

10

experienced workers and were deficient in their strength, all of that could almost always lead to a situation where an injury would occur?

A. Well, if all the – if everything that you said was negative and it was, yeah, it's a, it's an issue.

\*\*\*

Q. Let me just follow-up with some additional hypotheticals and ask you: Assuming you don't have proper engineering calculations, you don't have design drawings on site, assume that you have inexperienced worker or workers, and you don't have proper forming to occur, situations like that, don't you believe it's almost certain that an accident or injuries such as this are going to occur?

A. There is a potential.

Q. Is that a yes?

A. Yes.

Transcript of Deposition of John Katchan [D.E. 61-10 at 32-33, 78].

Initially, Plaintiffs read too much into Katchan's testimony. In response to the first hypothetical, Katchan simply said that the scenario painted by Plaintiffs' counsel was an "issue." In response to the second hypothetical, Katchan stated that there was a "potential" for an accident or injuries and it was only after counsel's insistence that he answered that an accident or injury was "almost certain" to occur. However, Plaintiffs have not established that this second hypothetical scenario actually occurred or that Katchan's individual opinion testimony binds Bradshaw. In any event, Katchan's post-accident testimony does not create an issue of fact as to the existence of pre-accident explicit warnings, which is the statutory basis upon which Plaintiffs have staked their case.

The evidence adduced by Plaintiffs falls short of showing that there is a genuine issue of material fact as to whether Adrian's injury was virtually certain to occur based on explicit warnings specifically identifying the danger associated with the concrete pour.

11

C. *__Deliberate concealment/misrepresentation__*

Given the absence of prior similar accidents and explicit warnings, Bradshaw cannot be imputed with knowledge of a known danger that it deliberately concealed or misrepresented to Adrian. Moreover, there is no record evidence whatsoever of deliberate concealment or misrepresentation. Plaintiffs simply proffer that Adrian should have been told not to stand on the doughnut or to get off the doughnut, given Simon's purported warning that there was not enough bracing on the formwork and that neither Lytle nor anyone else corrected this problem. Plaintiffs' Opposition [D.E. 74 at 20]. However, as discussed above, Plaintiffs' interpretation of the "bracing" comments by Simon is not supported by the evidence. Moreover, it is undisputed that witnesses saw Adrian standing on the waler and that no one saw him step down from the waler to the doughnut. The only evidence is that he was found crushed between the doughnut and the waler, but it is not known how he ended up in that position.

The evidence adduced by Plaintiffs falls short of showing that there is a genuine issue of material fact as to whether Bradshaw deliberately concealed or misrepresented the danger associated with the concrete pour.

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Bradshaw's Motion for Summary Judgment [D.E. 60] be GRANTED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir.

1993).

RESPECTFULLY SUBMITTED at Miami, Florida, this 21st day of January, 2014.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: Chief United States District Judge Federico A. Moreno
Counsel of record